STATE, THE CENTRAL RAILROAD COMPANY OF NEW JERSEY ET AL., PROSECUTORS, v. THE HUDSON TERMINAL RAILWAY COMPANY.

1. The General Railroad act, (*Rev.*, *p.* 925,) does not authorize corporations organized under it to take, by condemnation, more land than a strip one hundred feet wide *inter terminos*.

2. If, under the General Railroad act, a corporation presents a petition for the condemnation of more land than it is authorized to condemn, averring its inability to agree with the owner for the purchase of the whole, the proceedings will, on *certiorari*, be set aside *in toto*.

3. Persons named in a petition for the condemnation of land as claim-

ants of some interest in the land, and thereby made parties to the proceedings, may, by *certiorari*, question the authority of the petitioner to institute such proceedings, without showing that they really have an interest in the land.

———

On *certiorari* to review proceedings of commissioners in the matter of condemnation of land.

Argued at February Term, 1884, before Justices KNAPP, DIXON and MAGIE.

For the prosecutors, *James E. Gowen,* (of Pennsylvania,) and *B. Williamson.*

For the defendant, *W. H. Corbin* and *R. Gilchrist.*

The opinion of the court was delivered by

DIXON, J.   On January 16th, 1884, the Hudson Terminal Railway Company, organized under the General Railroad act, (*Rev., p.* 925,) for the construction of about a mile and a quarter of railway in Jersey City, instituted proceedings before a justice of this court, by a petition for the condemnation of three parcels of land; the first being a strip one hundred feet wide and about forty-one hundred and fifty feet long, extending from high-water line on Communipaw cove, easterly to the centre line of Washington street, and comprising the right of way of said company as filed in the office of the secretary of state; the second being a strip one hundred feet wide and about thirty-five hundred feet long, extending from the same high-water line easterly to a point six hundred feet west of the centre line of Washington street, and adjoining the first strip on the north; the third being a block of land six hundred feet long and four hundred and thirteen feet wide, lying on the west of the centre line of Washington street, and also adjoining the first strip on the north and the second strip on the east.   The justice having made an order appointing commissioners to appraise the lands, allowed a *certiorari* removing the proceedings to this court, at the instance of some of those whom the petitioner had made parties as claimants of the land.

Central Railroad Co. v. Hudson Terminal Railway Co.

These prosecutors seek to have the proceedings set aside on the ground (*inter alia*) that the petitioner has no right to take by condemnation land exceeding one hundred feet in width.

The petition alleges that the condemnation is claimed under the eleventh section of the Railroad act; that the first strip is required for "the route and right of way," and the second and third strips for "certain necessary works, buildings, conveniences, appurtenances and appendages." The counsel of the company also rely upon the same section.

This section begins by declaring that any railroad constructed under the provisions of the act shall not exceed one hundred feet in width, unless more land shall be required for the slopes of cuts and embankments. The term "railroad," as here employed, certainly does not embrace all lawful structures of the company, for other expressions in the act plainly authorize erections beyond the hundred-feet strip, but the parties disagree as to whether it is limited to the road-bed and tracks, or includes, besides, all necessary works, buildings, conveniences, appurtenances and appendages mentioned in the section, and for which land may be condemned. The petitioner takes the former position; the prosecutors the latter. One or the other of these interpretations is unquestionably correct, but the section itself does not clearly indicate which should be adopted. In the English Railway Clauses Consolidation act, (8 *and* 9 *Vict.*, c. 20,) care was taken to define the word "railway" as including with the way the fixed appliances appropriate for its use, but in the eleventh section of our act the expression "railroad" seems to be ambiguous. Thus, in one sentence we find mention of "the route of such railroad and the * * * necessary works, buildings, conveniences, appurtenances and appendages thereof," as though these works, &c., were embraced in the idea of "the railroad" in the same sense as its route was. So again, another clause speaks of "a railroad with a single or double track, with side tracks, turnouts, offices and depots," thus putting offices and depots in the same category as tracks and turnouts, as part of the railroad. On the other hand, the proviso of the sec-

tion refers to "said railroad and its conveniences, appurtenances and appendages," as if these latter were things additional to the railroad proper. Hence, I think, if we were confined to the language of this section, the meaning would be in doubt.

As we look beyond the section to the other portions of the act touching the power of condemnation, they appear to lean in favor of the interpretation for which the prosecutors contend. Thus, in the general enumeration of corporate powers contained in the first section, the power to take lands, (*i. e.*, by condemnation,) seems to be limited (¶ IV.) to the construction of the *road*, with its cuttings and embankments. So, by the twelfth section, where the proceedings to condemn are prescribed, they are to be taken for the purpose only of getting land or materials required in the construction of the *road*. The term *road* in these sections must be synonymous with *railroad* in the eleventh section, and they therefore tend to show that the power of condemnation was confined to the hundred-feet strip. Without the twelfth section, the right to condemn is not legally conferred at all, and if the word "road," as used in it, does not embrace any other structures than the tracks and their bed, then the power of condemnation is manifestly inadequate as to the purposes for which it may be exerted; but if it includes the fixed appliances needed in operating a railroad, it is sufficient for ordinary enterprises, although limited in extent.

If now we turn from mere verbal interpretation to more substantial considerations, surer footing will be found leading still in the same direction.

According to the claim of the petitioner, the power of condemnation has no definite limit; it extends to the acquisition of any lands required for the construction of necessary works, buildings, conveniences, appurtenances and appendages. Giving to the word "necessary," the meaning of "appropriate and convenient," as was done in *State* v. *Hancock*, 6 *Vroom* 537, it becomes obvious that this power is practically unbounded, save by the corporate uses in which a railroad company can

legitimately employ real estate. How extensive these uses are, a little reflection suffices to show; even when the uses were not legitimate, it would generally be more profitable for the individual owner to surrender his estate, than to engage in a contest over so shadowy a line. Against the intention to grant to any corporation so large a power over private property, there must exist a very strong presumption, and very clear expressions are necessary to confer it. These I do not find.

Again, it is plain that the right to condemn, delegated by this statute, implies the power to purchase, for according to the twelfth section, an effort to purchase by agreement must precede the exercise of the power of condemnation. If, therefore, the eleventh and twelfth sections authorize the company to condemn, and hence to purchase lands, without stint, for the erection of necessary, *i. e.*, appropriate and convenient works, buildings, conveniences, appurtenances and appendages, then it becomes difficult to see what considerations led the legislature to enact the seventeenth section, which grants power to purchase, have and hold real estate at or near the commencement or termination of the road, or at any other point on the line of the road where the directors may think proper to establish a depot, not exceeding ten acres at each place; and to erect thereon houses, warehouses, workshops and such other buildings and improvements as they may deem expedient for the safety of their property, and for other necessary uses appertaining to their business. The purposes for which land may be acquired under this section seem to me no broader than those covered by the petitioner's interpretation of the eleventh section. The distinction suggested by counsel based upon the use of the word "expedient," in the one, and "necessary," in the other, vanishes before the decision in State *v.* Hancock. But while the purposes are not broader, the area of land is carefully circumscribed. Why add this restricted power if a more comprehensive authority had already been granted?

On the whole, it appears more rational to conclude that the

legislature designed to grant only limited powers over real estate, whether by condemnation or by purchase, that the former can take in only one hundred feet in width, *inter terminos*, and the latter only a tract of ten acres at each designated point.   This will enable companies to acquire private property compulsorily to an extent sufficient for their indispensable uses, and for their conveniences to go into the market as other buyers.

But if the claim of the petitioner had better support than I have been able to discover, it is a doubtful one at best, and to doubt is to be resolved against it.

The construction thus put upon this statute seems to accord with that usually given to railroad charters.   *Inhabitants of Worcester* v. *Western R. R. Co.*, 4 *Metc.* 564; *State* v. *Hancock*, 4 *Vroom* 315, 316; *S. C.*, 6 *Vroom* 537, 548; *Childs* v. *Central R. R. Co.*, 4 *Vroom* 323.

If, then, the petitioner has not power to condemn all the land described in the petition, can these proceedings be maintained for so much as is within the hundred-feet strip?   A single consideration shows that the proceedings must stand or fall *in toto*.   Before applying to the justice for commissioners, the company must have been unable to agree with the owner for the purchase of the land required.   The petition avers that the company could not agree with the owners as to the price of all the lands demanded; but it by no means follows that a bargain could not have been made for the sale of the hundred-feet strip.   The owners are entitled to have an opportunity for such a contract presented before their land can be taken by condemnation.   Hence, the entire proceeding is illegal.

But the petitioner insists that the prosecutors have no interest in the land described in the petition, and therefore are not entitled to maintain the *certiorari*, since they cannot be injured by the condemnation.

The question which we have above decided properly precedes any investigation of the title of the prosecutors.   The petition avers that the prosecutors claim an interest in the

land, and makes them parties to the proceedings, so that any interest which they may have will be subjected to the petitioner's use. If the proceedings go on to completion and stand unreversed, the prosecutors will be precluded from any further controversy as to the right of the petitioner to take possession of the *locus in quo* for the purposes of its railroad. *State* v. *Hudson Tunnel R. R. Co.*, 9 *Vroom* 548, 551. The petition therefore aims to cast upon the prosecutors the necessity of now determining finally whether they have any interest in this land which cannot lawfully be burdened with the petitioner's uses, and of showing such interest if they claim it. Thereupon the prosecutors set up that the petitioner has no authority to impose even that obligation upon them. Certainly it is not in the power of any person at pleasure to require every other person to substantiate his claim to any specific property. One must show some peculiar right to do so. The petitioner's sole claim to such a right rests upon an alleged right to condemn. But if the latter be unsupported, as we think it is, the former also must fall. By reason, therefore, of the mere institution of this proceeding against the prosecutors, they became entitled to controvert the authority of the petitioner to institute it, without regard to the question whether in fact they had any estate in the land; and the only legal mode of raising such a controversy was by the *certiorari* which they have purchased. They have, therefore, a legal standing for their writ.

Let the proceedings be set aside, with costs.