186 N.J. Super. 344 (1982)
452 A.2d 694
BOROUGH OF ROCKAWAY, A MUNICIPAL CORPORATION OF THE STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
MARGARETE DONOFRIO AND FRED G. DONOFRIO, HER HUSBAND; DOROTHEA ALLEN AND MR. ALLEN, HER HUSBAND; AND ROBERT ALLEN AND MRS. ALLEN, HIS WIFE, DEFENDANTS-APPELLANTS.
Superior Court of New Jersey, Appellate Division.
Argued September 28, 1982.
Decided October 25, 1982.
*345 Before Judges MILMED, MORTON I. GREENBERG and FURMAN.
Edward D. McKirdy argued the cause for appellants (McKirdy & Riskin, attorneys; John H. Buonocore, Jr., on the brief).
Edward A. Berman argued the cause for respondent (Wacks, Ramsey & Berman, attorneys).
The opinion of the court was delivered by MORTON I. GREENBERG, J.A.D.
*346 The issue raised on this appeal under the Eminent Domain Act of 1971, N.J.S.A. 20:3-1 et seq., has not been specifically decided in any reported opinion. Should a condemnation action be dismissed if the condemnor does not comply with the requirements of N.J.S.A. 20:3-6 before instituting a condemnation action?
The procedural history of this case is somewhat complicated. On February 15, 1980 plaintiff borough's administrator sent a letter to the Estate of Carrie Allen. The letter recited that it was plaintiff's intention to acquire for a public purpose a portion of Block 13, Lot 3. It is not clear from the record why the letter was sent to the Estate of Carrie Allen. We assume the property assessment was carried that way. The letter indicated that plaintiff had engaged an appraisal firm to arrive at a fair and equitable consideration for the acquisition and that the amount it recommended was $3,500. Plaintiff offered to acquire the land for that price.
This letter did not lead to an out-of-court acquisition. On July 18, 1980 plaintiff filed a condemnation complaint against defendants. Plaintiff alleged that defendants owned the property, that it desired to acquire the property for street improvements, including drainage, that it had attempted to acquire it in negotiations with defendants; that it had offered defendants $3,500 and that it had been unable to acquire the property. Consequently, plaintiff sought the appointment of commissioners to value the property.
Defendants filed an answer to the complaint on November 5, 1980. They admitted that they owned the property and that plaintiff had offered to purchase it for $3,500. Defendants asserted as a separate defense that plaintiff had not complied with N.J.S.A. 20:3-1 et seq. and particularly had failed to satisfy the requirements of N.J.S.A. 20:3-6 before bringing the action. Specifically, defendants asserted that plaintiff had failed to give them information concerning the projected use of the property *347 by plaintiff. This allegation charged a significant omission since plaintiff proposed only a partial taking. Thus, defendants wanted to know the impact of the taking on the remaining property. The answer further indicated that plaintiff had failed to specify the elevation of the improvements and what the access would be to the remaining property. Defendants claimed that because of the lack of information given them, plaintiff had not made a bona fide offer for the property. Defendants further pleaded that plaintiff had not accurately described the property to be taken.
Defendants filed an affidavit of Barry J. Krauser, a licensed real estate broker, with their answer. He indicated that after reviewing the map of the proposed taking and the proposed acquisition sketch he found it impossible to make any determination concerning the impact of the taking on the remainder. Consequently, he could not assess the damage to the remaining property. On November 13, 1980, Harry J. Riskin, defendants' attorney, filed a certification in which he stated that he had attempted to get further information from plaintiff in order to assist Krauser in making his appraisal. Specifically, he tried to discover the elevation of the road to be constructed. Riskin indicated that he could not obtain reliable information.
A pretrial conference was held November 14, 1980. Among the issues listed to be decided at the trial was whether plaintiff had complied with N.J.S.A. 20:3-1 et seq.; whether plaintiff had made an appropriate offer under N.J.S.A. 20:3-6, whether defendants were given the opportunity to accompany plaintiff's appraiser on the property during his inspection, as required by N.J.S.A. 20:3-6; whether plaintiff made a reasonable disclosure of the manner it calculated the offer under N.J.S.A. 20:3-6, and whether plaintiff's alleged failures rendered the matter jurisdictionally defective. A plenary hearing was scheduled for December 12, 1980. Since the parties agreed there were no facts in dispute, no testimony was taken at that time. Plaintiff's attorney at the hearing stipulated that his client had not complied with N.J.S.A. 20:3-6 since it did not notify defendants that an *348 appraiser was going to the property. Thus, defendants did not have the opportunity which N.J.S.A. 20:3-6 required that they be given, to accompany the appraiser to the property. Because of this omission defendants urged that the action be dismissed. The judge, however, determined to allow plaintiff to attempt to cure the defect. Thus, he did not dismiss the action. Rather, he stayed the case pending appointment by plaintiff of a new appraiser. He required that defendants be given notice of an opportunity to accompany the appraiser on the property during his inspection. Plaintiff was given until January 19, 1981 to give defendants the appropriate notice. A formal order evidencing this ruling was filed on December 24, 1980. The order provided that if plaintiff did not comply with its terms, the action would be dismissed upon defendants' request if their attorney filed an ex parte affidavit reciting the noncompliance.[1]
It appears that plaintiff complied with the order of December 24, 1980. In any event, the action was not dismissed. On April 28, 1981 an order was signed that plaintiff was to amend its complaint to enlarge the description of the property being condemned. On the same day the matter came on on defendants' motion to dismiss. The following stipulation was entered on the record at that time:
As a result of the amendment of the complaint, certain requirements set forth in N.J.S.A. 20:3-6 have not been complied with by the condemning authority. They are: one, there is no resolution of the Mayor and Council with regard to the total area as reflected by the proposed amended taking; two, there has been no appraisal of the value of the amended total area to be taken and the damages to the remainder, if any, as reflected by the proposed amended taking; three, there has been no resolution of the Mayor and Council of the Borough of Rockaway approving the appraisal affidavits; four, there has been no offer extended in writing based upon the appraisal, which offer must be no less than the amount of appraisal affidavits; and five, it has not been determined whether an agreement can be reached subsequent to the foregoing steps to be taken.
*349 At the argument on the motion plaintiff's attorney gave an explanation as to the reason for the amendment to the complaint. The actual right of way of the street was not to be changed. However, there was a dispute as to ownership of property within the right of way. To avoid litigation on this issue plaintiff determined to condemn the larger area. Because additional property was being condemned plaintiff had not complied with N.J.S.A. 20:3-6. Clearly, no offer had been made on the larger area before the action was started. Plaintiff asked the trial judge to stay the proceedings so that it could comply with the statute. Plaintiff agreed that the valuation date would be changed to May 1, 1981. Defendants argued for a strict construction of the Eminent Domain Act of 1971.
The judge declined to dismiss the action. He reasoned that plaintiff's noncompliance was brought about by confusion as to the amount of the land to be taken. Thus, the judge stayed the matter so that plaintiff could comply with N.J.S.A. 20:3-6. The parties then agreed upon a timetable for plaintiff to take the procedural steps mandated under that statute. On May 11, 1981 the judge entered an order staying the action pending plaintiff's compliance with N.J.S.A. 20:3-6.
Further proceedings followed the hearing of April 28, 1981. In general, plaintiff attempted to comply with N.J.S.A. 20:3-6. Defendants denied that plaintiff had so complied. Ultimately, after hearing oral argument on July 31, 1981, the trial judge granted plaintiff summary judgment, determining that plaintiff had complied with N.J.S.A. 20:3-6. We cannot determine from the record when plaintiff finally complied with N.J.S.A. 20:3-6, but we know it was after April 28, 1981. On September 15, 1981 the trial judge signed an order appointing commissioners.
Subsequently, defendants filed a notice of appeal. On this appeal defendants contend that the judge erred in failing to dismiss the complaint on December 12, 1980 and April 28, 1981, and in subsequently granting plaintiff summary judgment.
*350 The Eminent Domain Act of 1971 had its origins in L. 1962, c. 50. That statute created an Eminent Domain Revision Commission. The Commission was charged with proposing a revision or revisions of the Eminent Domain Act then in force, N.J.S.A. 20:1-1 et seq. On April 15, 1965 the Commission submitted its report for revision of the procedures for condemnation. It was on the basis of the recommendations in this report that the act was passed. See Monmouth Cty. v. Wissell, 68 N.J. 35, 38-40 (1975). In its summary of conclusions and recommendations the Commission stated:
To foster amicable adjustments and thereby reduce litigation, the statute shall require that before proceedings are instituted, the condemning body shall conduct bona fide negotiations with the owners, through fair offers of compensation, including a reasonable disclosure of the manner of arriving at the offer.
Article II of the report, dealing with negotiation for acquisition, expanded on the foregoing recommendation. It indicated:
Complaints have been made to the Commission that negotiations for acquisition are frequently conducted in an arbitrary manner. The owner is advised merely of the dollar amount of the offer, but is given no information, even if he requests, as to the manner of ascertaining the amount so offered. It is believed that such treatment of a property owner is improper. The Commission is of the opinion that if fair offers are made based upon appropriate data disclosed to the owner, many acquisitions will be completed amicably, without subjecting the authority and the owner to the expense and delay of litigation.
The Commission, therefore, recommends that no proceedings for the taking of property shall be instituted until bona fide negotiations (including a reasonable disclosure of the basis of the offer) have failed. No offer so made shall be evidential in the cause. Should the final award exceed the amount of the offer by more than 25%, the condemnee shall be paid, in addition to his award, his reasonable attorney and expert fees (to be fixed by the court), but not in excess of 10% of hte [sic] award. Some members recommend that to meet the problem of excessive demands by property owners, a like penalty be imposed if the eventual award be similarly less than the amount requested.
Undoubtedly, situations will arise which make negotiations impossible or impractical, such as when an owner lacks capacity to convey, is unknown, or resides out of the state. Upon a disclosure of those facts to the court, negotiations may be omitted.
This recommendation of the Commission was partially reflected in N.J.S.A. 20:3-6, which provides as follows:
Whenever any condemnor shall have determined to acquire property pursuant to law, including public property already devoted to public purpose, but cannot acquire title thereto or possession thereof by agreement with a prospective *351 condemnee, whether by reason of disagreement concerning the compensation to be paid or for any other cause, the condemnation of such property and the compensation to be paid therefor, and to whom payable, and all matters incidental thereto and arising therefrom shall be governed, ascertained and paid by and in the manner provided by this act; provided, however, that no action to condemn shall be instituted unless the condemnor is unable to acquire such title or possession through bona fide negotiations with the prospective condemnee, which negotiations shall include an offer in writing by the condemnor to the prospective condemnee holding the title of record to the property being condemned, setting forth the property and interest therein to be acquired, the compensation offered to be paid and a reasonable disclosure of the manner in which the amount of such offered compensation has been calculated, and such other matters as may be required by the rules. Prior to such offer the taking agency shall appraise said property and the owner shall be given an opportunity to accompany the appraiser during inspection of the property. Such offer shall be served by certified mail. In no event shall such offer be less than the taking agency's approved appraisal of the fair market value of such property. A rejection of said offer or failure to accept the same within the period fixed in written offer, which shall in no case be less than 14 days from the mailing of the offer, shall be conclusive proof of the inability of the condemnor to acquire the property or possession thereof through negotiations. When the holder of the title is unknown, resides out of the State, or for other good cause, the court may dispense with the necessity of such negotiations. Neither the offer nor the refusal thereof shall be evidential in the determination of compensation.
See, also, State v. Meisler, 128 N.J. Super. 307, 310 (Law Div. 1974).
Unfortunately, the Legislature, in enacting N.J.S.A. 20:3-6, did not indicate what the consequence would be if the condemnor failed to comply with the section before the action started. It merely provided that unless a condemnor complied with the section, "no action to condemn shall be instituted...." Thus, we have no clear statement as to whether a condemnor may cure a defect in the proceedings.
Unquestionably, there is substantial authority under other statutes and ordinances that unless the condemnor complies with the enabling legislation the proceedings are void:
It is, of course, perfectly competent for the legislature to grant the power of eminent domain subject to the condition that the required land cannot be obtained by purchase, and, in such a case, unless there in a bona fide attempt on the part of the condemnor to induce the owner to sell the land at a reasonable figure, the condition under which the power is granted is not fulfilled, and in such case any attempted exercise of eminent domain is unauthorized and consequently void and of no effect. [6 Nichols, The Law of Eminent Domain (3 ed. Sackman 1969), § 24.62[1] at 155-158]
*352 There is precedent in New Jersey supporting this view. See Central R.R. Co. v. Hudson Terminal Ry. Co., 46 N.J.L. 289, 294 (Sup.Ct. 1884); State, Boice, pros. v. Plainfield, 41 N.J.L. 138, 140 (Sup.Ct. 1879).[2]
We do not doubt that the decision of the trial judge to stay the action and allow plaintiff to comply with N.J.S.A. 20:3-6 seems to comply with the general approach our courts take with respect to defects in proceedings. Thus, the rules of court are liberal with respect to amendments to pleadings. R. 4:9-1. Further, our courts prefer to dispose of matters on their merits rather then on technical bases. See, e.g., Grubb v. J.C. Penney Co., Inc., 155 N.J. Super. 103 (App.Div. 1978).
Yet a condemnation case raises special considerations. A condemnee ordinarily does not request that his property be condemned. Certainly, defendants here did not. A condemnee has a constitutional right to just compensation. See N.J.Const. (1947), Art. I, par. 20; Washington Market Enterprises, Inc. v. Trenton, 68 N.J. 107, 116 (1975). If a condemnee must engage an attorney to represent him, then the fees of the attorney will necessarily reduce the award of just compensation kept by the condemnee. The Eminent Domain Act does not require that upon completion of a proceeding the condemnor must pay the condemnee's legal fees and other expenses in the proceeding as an additional element of damage.[3] Nor is there any provision in our court rules providing for allowance of attorney's fees to the *353 condemnee. See R. 4:42-9. Therefore, the requirements of N.J.S.A. 20:3-6 are important in giving a condemnee an opportunity to receive and keep his full award. If the condemnor starts a condemnation action, ordinarily a condemnee contesting the case will have expenses in opposing either the condemnor's right to condemn or in seeking compensation in excess of that offered. If the condemnor is finally successful in obtaining title, as it ordinarily is, the compensation paid cannot make the condemnee whole, for his expenses of litigation must be borne by him. Thus, if the procedural omissions cause a condemnation action to be brought which might otherwise have been avoided, they may have a substantive impact on a condemnee.
In another context this court has been solicitous of the rights of a condemnee in a way which indicates the necessity of permitting him to receive just compensation even though in doing so we departed from a rule ordinarily followed in the analogous situation in other cases. In Wayne Tp. v. Cassatly, 137 N.J. Super. 464 (App.Div. 1975), certif. den. 70 N.J. 137 (1976), we indicated (at 471) that the allowance of interest on a condemnation award is a requirement of constitutional magnitude where the actual taking of the property is not contemporaneous with payment. Thus, we held (at 474) that a condemnee could obtain interest on an award at a rate to best indemnify him for the loss of the use of the compensation to which he was held to be entitled. This departed from the court rule which set interest on judgments at a fixed rate. See R. 4:42-11(a).
We think that this case is best decided by considering the fundamental purpose of N.J.S.A. 20:3-6. See Central Constr. Co. v. Horn, 179 N.J. Super. 95, 104 (App.Div. 1981). We know that the purpose of the Legislature in enacting N.J.S.A. 20:3-6 was, as stated by the Eminent Domain Revision Commission, to encourage entities with condemnation powers to make acquisitions without litigation. Such a procedure thereby saves both the acquiring entity and the condemnee the expenses and *354 delay of litigation. It permits the landowner to receive and keep full compensation. This purpose is furthered by strict construction of N.J.S.A. 20:3-6. If a condemnor may ignore the statute and later cure the proceedings, the purpose of N.J.S.A. 20:3-6 will be completely frustrated. Indeed, an order for a stay so that a condemnor may then do what it should have done earlier will encourage noncompliance with N.J.S.A. 20:3-6. A condemnor will know that if it does not comply, it may nevertheless proceed. Here plaintiff completely ignored its obligation to permit defendants to accompany its appraiser on the property before the action was started. Had plaintiff complied with N.J.S.A. 20:3-6 in this regard, it is entirely possible that defendants might have better understood what was being taken and what would be built. At the very least, an opportunity to avoid misunderstandings would have been presented. Plaintiff can give no reason for its failure to honor the statute. In these circumstances we hold that the order of December 24, 1980, reflecting the oral decision of December 12, 1980 permitting plaintiff to appoint a new appraiser so that defendants would have the opportunity to accompany him to the property, was erroneous.
Our disposition makes it unnecessary for us to determine whether plaintiff's noncompliance with N.J.S.A. 20:3-6, as stipulated on the record on April 28, 1981, caused as a result of the amendment to the complaint, would in itself have convinced us to reach this result. Obviously, there is a distinction between a condemnor wilfully noncomplying with N.J.S.A. 20:3-6 before bringing an action, as here, and a condemnor compelled to later amend a complaint in an ongoing case. Further, it renders moot the issue of whether plaintiff was properly awarded summary judgment.
The order of September 15, 1981 appointing commissioners is vacated. The order of December 24, 1980 is reversed. The complaint is dismissed.
NOTES
[1] The order contains an error since it indicates that the dismissal would be granted when plaintiff's attorney filed the affidavit. Obviously, defendants' attorney was to file the affidavit.
[2] The issue was posed but not answered in Millburn Tp. v. Pitt, 68 N.J. 424 (1975). There the condemnees argued that the condemnor had not complied with N.J.S.A. 20:3-6. However, the Supreme Court seemed to indicate that the condemnor had complied. In any event, the court held that the condemnees had waived statutory procedural matters. 68 N.J. at 427. See also State v. Rowland, 183 N.J. Super. 558, 565-566, where the court stated that the provisions of N.J.S.A. 20:3-6 are mandatory. But in Rowland, the plaintiff was held to have complied with them.
[3] If a condemnor abandons a proceeding the condemnor "shall pay the expenses of all condemnees who have appeared in the action." N.J.S.A. 20:3-35.