COUNTY OF MONMOUTH, PLAINTIFF-APPELLANT, v. WHIS-
PERING WOODS AT BAMM HOLLOW, INC., A CORPORA-
TION, WILLIAM J. MONTANARO; FRANK DIMISA; HARRY
KANTOR; VICTOR LOSQUADRO AND TOWNSHIP OF MID-
DLETOWN, DEFENDANTS-RESPONDENTS.

JOSEPH AZZOLINA, INDIVIDUALLY AND AS A REPRESENTA-
TIVE OF A CLASS OF ALL THOSE PERSONS SIMILARLY
SITUATED, PLAINTIFF, v. THE BOARD OF CHOSEN FREE-
HOLDERS OF THE COUNTY OF MONMOUTH, DEFENDANT.

Superior Court of New Jersey
Appellate Division

Argued September 28, 1987—Decided October 16, 1987.

1

Before Judges DREIER and BAIME.

*Alfred Ferguson* argued the cause for appellant (*McCarter & English*, attorneys; *Brenda C. Liss*, on the brief).

*Peter H. Wegener* argued the cause for respondents (*Bathgate, Wegener, Wouters & Neumann*, attorneys; *Peter H. Wegener*, on the brief).

The opinion of the court was delivered by

BAIME, J.A.D.

This is an appeal from a judgment of the Superior Court, Law Division, dismissing appellant County of Monmouth's action seeking to condemn property owned by respondents Whispering Woods at Bamm Hollow, Inc., Frank DiMisa, Harry Kantor and Victor Losquadro. Following a hearing, the trial judge determined that appellant had not engaged in bona fide negotiations with respondents prior to the commencement of the action, contrary to the mandate of *N.J.S.A.* 20:3–6. The judge also concluded that the complaint was defective because it did not provide reasonable disclosure of the information required by *R.*4:73–1. In the latter respect, the judge refused to relax the rules under *R.* 1:1–2 despite appellant's compliance with the requirements of *R.*4:73–1 some eight days after the filing of the complaint. While we find that the trial judge applied our court rules with undue rigidity and we disagree with portions of his reasoning, we nevertheless conclude that appellant's failure to comply with the statutory requisites set forth in *N.J.S.A.* 20:3–6 compelled dismissal of the complaint. We thus affirm.

The essential facts are not in dispute. The property in question is a 276–acre tract which presently consists of a 27–hole golf course. In 1984, William Montanaro acquired an option to purchase the property at a price of $8.2 million. We have not been apprised of the consideration paid for the option. In any event, apparently Montanaro intended to develop the property by constructing 780 townhouses and by reducing the golf course to 18 holes. Montanaro filed an application with the Middletown Township Planning Board seeking conditional use, site plan and subdivision approvals. That application generated considerable opposition, resulting in a request by the Township that the Monmouth County Board of Freeholders or the Monmouth County Parks Commission conduct a study regarding the possible acquisition of the entire tract.

Montanaro became aware of the County's interest in acquiring the property upon meeting with the latter's appraiser.

In late 1985, Montanaro attended a meeting of the Monmouth County Parks Commission, at which he urged prompt action regarding the question of acquisition. The record reflects that the matter became a subject of substantial public attention and it is uncontradicted that respondents were fully cognizant of the County's interest in the property.

Despite the possibility of condemnation, respondents entered into a contract of sale with Montanaro on January 31, 1986. The contract provided for the purchase of the property at a price totaling $16.3 million. The contract required (1) two separate cash payments of $250,000, (2) assumption of Montanaro's $4,125,000 obligation to Bamm Hollow Realty Corp., (3) a cash payment of $4.3 million at the closing and (4) a non-recourse purchase money mortgage for $7,735,000 in favor of Montanaro.

On March 6, 1986, respondents attended a meeting of the Board of Freeholders concerning a proposed bond issue to finance the acquisition of Bamm Hollow. At the meeting, respondents apprised the freeholders of their new application to the Township, which anticipated a greatly reduced use of only 215 units with 80% of the tract to remain undeveloped. *See Whispering Woods at Bamm Hollow, Inc., Harry Kantor, Frank DiMisa and Victor Losquadro v. Township of Middletown Planning Board and Judith Stanley,* 220 *N.J.Super.* 161 (Law Div.1987). The freeholders nevertheless adopted the bond ordinance.

Unbeknownst to respondents at the time of the meeting, the County had sent to them a written offer to purchase the property for $8.2 million. Apparently, the letter had been placed in the mail on March 3, 1986. The letter, which was dated February 28, 1986, noted that the "market data [and] comparable sales" approaches were considered by the appraiser and that the sum of $8.2 million represented "just compensation" for acquisition of "all the right, title and interest to the lands taken in fee."

On March 20, 1986, respondents Kantor and DiMisa, along with their attorney, met with Freeholder Thomas Powers, County Administrator Robert Collins and County Counsel Richard O'Connor. During this meeting, respondents focused the discussion on possible alternative sites for condemnation, rather than on a demand for a different purchase price. In his testimony, respondent Kantor described his motivation for not discussing the value of the property. According to Kantor, he deemed the County's offer to be "laughable." In light of what he perceived to be the incredibly low offer made by the County, it was his purpose to persuade its representatives that approaches other than condemnation of the entire tract would be both feasible and more beneficial. Among the options discussed was the purchase of another golf course in the area or the acquisition of only part of the Bamm Hollow site. Despite representations in the February 28 offer letter that the property had been appraised, Kantor "believe[d] that the offer was not based upon an appraisal but rather [was premised] upon a misunderstanding regarding the pre-existing $8.2 million [option price that had been made] approximately two years [before]." On the other hand, the County was of the view that the transaction with Montanaro was a sham, designed to create an inflated market price for the Bamm Hollow property. In that context, the County was aware of the allegation that DiMisa had previously conducted himself in a manner which, it believed, was designed to inflate the purchase price of another property.[1]

Although the question of the value of the Bamm Hollow property had only briefly, if ever, been discussed, O'Connor filed the complaint in condemnation on April 8, 1986. The complaint did not set forth the information required by *R.*4:73–

---

[1]This pertained to the Marlu–Twitchell property, another tract in Monmouth County. One year prior to the declaration of taking, DiMisa had purchased the property for $8 million, but later had demanded $32 million as just compensation.

1, which had been amended, effective January 2, 1986, to mandate, among other things, "reasonable disclosure of the manner in which the amount has been calculated ... includ[ing] ... a description of the appraisal valuation method or methods relied upon as well as a breakdown of the appraised value allocated to the land to be acquired ... and data concerning comparable sales...." Apart from this defect, which was cured eight days after the complaint was filed, appellant had not provided respondents with the appraisal prior to commencement of the litigation.[2]

Respondents filed an answer and immediately thereafter moved to dismiss the complaint. The principal thrust of their contention was, and continues to be, that appellant had failed to engage in bona fide negotiations with them concerning the value of the property which, under *N.J.S.A.* 20:3-6, constitutes a prerequisite to the commencement of a condemnation action. They also relied upon the undisputed fact that they had not been supplied with a copy of the appraisal prior to the filing of the complaint. Lastly, they contended that appellant's complaint was defective because it did not set forth the information required by *R.*4:73-1.

As we have noted, the trial judge granted respondents' motion to dismiss the complaint. The judge found that appellant's failure to include in the complaint the information required by *R.*4:73-1 required dismissal of the action without any inquiry into the question of what, if any, prejudice was suffered by respondents by virtue of appellant's error. According to the judge, appellant's efforts to cure the problem constituted an insufficient basis to relax the mandate of *R.*4:73-1. Alternatively, the judge determined that appellant had failed to engage in bona fide negotiations with respondents, because the value of the property had never been the subject of discussion. The judge heavily relied upon the fact that the negotiations between

---

[2]In addition, Joseph Azzolina filed a class action against the Monmouth County Board of Chosen Freeholders. This suit was consolidated with the County's condemnation action.

the parties were confined to the subject of possible alternative sites for condemnation. Finally, the judge found that appellant's failure to provide respondents with the appraisal, a condition precedent to the action, violated the mandate of *N.J.S.A.* 20:3–6. Judgment was thus entered in favor of respondents.

Although we affirm the judgment dismissing appellant's complaint, we are not in complete agreement with the reasons expressed by the trial judge in reaching that result. Initially, we are of the view that the judge applied *R.*4:73–1 with inordinate rigidity. Of course, we recognize the need to demand strict compliance with the informational requirements of *R.*4:73–1. Nevertheless, the sanction of dismissal without any inquiry into whether the opposing party was prejudiced constitutes a draconian remedy, particularly where, as here, the litigant's error was wholly inadvertent and was cured shortly after the filing of the complaint.

*R.* 1:1–2 provides that "[u]nless otherwise stated, any rule may be relaxed or dispensed with by the court in which the action is pending if adherence to it would result in an injustice." In that context, our Supreme Court has recently observed that "[c]ompliance with the Rules of Practice is essential for an orderly legal system, but our goal is not so much rigid compliance ... as it is the attainment of substantial justice." *Viviano v. CBS, Inc.,* 101 *N.J.* 538, 550 (1986). It has thus been said that "justice is the polestar and our procedures must ever be moulded and applied with that in mind." *N.J. Highway Authority v. Renner,* 18 *N.J.* 485, 495 (1955). We must not forget that the Rules of Practice are not an end unto themselves, but a means of serving the ends of justice. *Sattelberger v. Telep,* 14 *N.J.* 353, 363 (1954). *See also Grubb v. J.C. Penney Co., Inc.,* 155 *N.J.Super.* 103, 106 (App.Div.1978); *Aruta v. Keller,* 134 *N.J.Super.* 522, 529 (App.Div.1975).

We also disagree with the trial judge's conclusion that the bona fide negotiations requirement of *N.J.S.A.* 20:3–6 can never

be satisfied unless the parties engage in a discussion of the value of the property and ultimately reach an impasse concerning that question. *N.J.S.A.* 20:3–6 sets forth the circumstances under which the Eminent Domain Act (*N.J.S.A.* 20:3–1 *et seq.*) is to be applied. The statute reads as follows:

> Whenever any condemnor shall have determined to acquire property pursuant to law, including public property already devoted to public purpose, but cannot acquire title thereto or possession thereof by agreement with a prospective condemnee, whether by reason of disagreement concerning the compensation to be paid or for any other cause, the condemnation of such property and the compensation to be paid therefor, and to whom payable, and all matters incidental thereto and arising therefrom shall be governed, ascertained and paid by and in the manner provided by this act; provided, however, that no action to condemn shall be instituted unless the condemnor is unable to acquire such title or possession through bona fide negotiations with the prospective condemnee, which negotiations shall include an offer in writing by the condemnor to the prospective condemnee holding the title of record to the property being condemned, setting forth the property and interest therein to be acquired, the compensation offered to be paid and a reasonable disclosure of the manner in which the amount of such offered compensation has been calculated, and such other matters as may be required by the rules. Prior to such offer the taking agency shall appraise said property and the owner shall be given an opportunity to accompany the appraiser during inspection of the property. Such offer shall be served by certified mail. In no event shall such offer be less than the taking agency's approved appraisal of the fair market value of such property. A rejection of said offer or failure to accept the same within the period fixed in a written offer, which shall in no case be less than 14 days from the mailing of the offer, shall be conclusive proof of the inability of the condemnor to acquire the property or possession thereof through negotiations. When the holder of the title is unknown, resides out of the State, or for other good cause, the court may dispense with the necessity of such negotiations. Neither the offer nor the refusal thereof shall be evidential in the determination of compensation.

By its very terms, *N.J.S.A.* 20:3–6 contemplates that an action to condemn property may be necessary "whether by reason of disagreement concerning the compensation to be paid or for any other cause...." Stated somewhat differently, the statute clearly envisions that bona fide negotiations may encompass subjects other than the price or value of the land sought to be occupied. Disagreements may occur concerning the fact, nature, condition or extent of the taking. The mere fact that an impasse relates to a subject other than the value or

price of the land does not preclude a finding that the bona fide negotiations requirement has been satisfied.

Even where the value or price of the property is the principal issue, we recognize that the owner may be so intransigent in his position as to preclude meaningful discussions. We do not suggest that the condemnor may dispense with its statutory duty to engage in bona fide negotiations merely because the positions of the parties are far apart or are expressed in strident tones. We would be short on realism, however, were we not to note that it takes at least two to negotiate and the record should be reviewed with that in mind.

■ Having said this, we nevertheless find that appellant's failure to supply respondents with the appraisal and the "manner in which the amount of such offered compensation ha[d] been calculated" prior to commencement of this litigation, constituted such a significant statutory dereliction as to compel dismissal of the complaint. As we noted previously, *N.J.S.A.* 20:3-6 requires "reasonable disclosure of the manner in which the amount of [the] offered compensation has been calculated, and such other matters as may be required by the rules." In a series of decisions, we have construed the statute as requiring disclosure of the condemnor's appraisal at the prelitigation stage. *See, e.g., N.J. Housing & Mtg. Fin. Agency v. Moses,* 215 *N.J.Super.* 318, 329 (App.Div.1987); *State by Commissioner of Transp. v. Hancock,* 210 *N.J.Super.* 568 (App.Div.1985), aff'g *State v. Hancock,* 208 *N.J.Super.* 737 (Law Div.1985). *See also State, by Com'r of Transp. v. Siris,* 191 *N.J.Super.* 261 (Law Div.1983). This construction comports with the clear legislative purpose, which was described by the Eminent Domain Revision Commission in its report as follows:

Complaints have been made to the Commission that negotiations for acquisition are frequently conducted in an arbitrary manner. The owner is advised merely of the dollar amount of the offer, but is given no information, even if he requests, as to the manner of ascertaining the amount so offered. It is believed that such treatment of a property owner is improper. The Commission is of the opinion that if fair offers are made based upon appropriate data disclosed to the owner, many acquisitions will be completed amicably, without subjecting the

authority and the owner to the expense and delay of litigation. The Commission, therefore, recommends that no proceeding for the taking of property shall be instituted until bona fide negotiations (including a reasonable disclosure of the basis of the offer) have failed. No offer so made shall be evidential in the cause. Should the final award exceed the amount of the offer by more than 25%, the condemnee shall be paid, in addition to his award, his reasonable attorney and expert fees (to be fixed by the court), but not in excess of 10% of the award. Some members recommend that to meet the problem of excessive demands by property owners, a like penalty be imposed if the eventual award be similarly less than the amount requested. Undoubtedly, situations will arise which make negotiations impossible or impractical, such as when an owner lacks capacity to convey, is unknown, or resides out of the state. Upon a disclosure of those facts to the court, negotiations may be omitted. Report, *Eminent Domain Revision Commission,* 16–17 (1965).

It was the purpose of the Legislature, in enacting *N.J.S.A.* 20:3–6, to encourage entities with condemnation powers to make acquisitions without litigation. The procedure thus adopted "thereby saves both the acquiring entity and the condemnee the expenses and delay of litigation." *Rockaway v. Donofrio,* 186 *N.J.Super.* 344, 353–354 (App.Div.1982). This purpose is advanced "by strict construction of *N.J.S.A.* 20:3–6." *Id.* at 354. As we have noted, "[i]f a condemnor may ignore the statute and later cure the proceedings, the purpose of *N.J.S.A.* 20:3–6 will be completely frustrated." *Ibid.* To that extent, dismissal of the complaint will have a prophylactic effect in that it will help to promote compliance with the statutory requirement.

Of course, we recognize that we are not concerned here with unsophisticated and unknowledgeable owners of a small tract of property. It has been said that "[t]he statutory requirements of 'bona fide negotiations' and 'reasonable disclosure' are particularly important when minor property interests are being acquired by an exercise of the power of eminent domain. Condemnees subject to these takings can ill afford to hire attorneys and appraisers whose fees are not [generally] recoverable in a condemnation proceeding...." *State v. Hancock, supra,* 208 *N.J.Super.* at 738. In contrast, respondents here are highly sophisticated land developers and businessmen who presumably can afford extensive and protracted litigation. We

are fully aware that litigation in this case continued long after respondents received the appraisal.

This much conceded, we cannot say from the vantage point of twenty-twenty hindsight that prelitigation disclosure of the appraisal would have had no impact on the parties' respective bargaining positions. Indeed, portions of the testimony to which we have referred point in the opposite direction. The County's offer of no more than the option price effectively determined the option to be worthless. This flies in the face of the actual sales price which, we recognize, might be subject to adjustment for the financing terms or other factors. Not knowing the basis for the County's offer, however, precluded respondents from reacting intelligently.

Accordingly, the judgment of the Law Division is affirmed.