915 A.2d 1092 (2007)
390 N.J. Super. 475
CITY OF PASSAIC, Plaintiff-Respondent,
v.
Charles SHENNETT, Defendant-Appellant, and
Fannie Shennett and Speigel, Inc., Defendants.
Wayne Asset Management, LLC, Plaintiff/Intervenor-Respondent,
v.
Charles Shennett, Defendant-in-Intervention-Appellant.
Superior Court of New Jersey, Appellate Division.
Argued November 9, 2006.
Decided February 9, 2007.
Harvey R. Pearlman, Rutherford, argued the cause for appellant (Friedman, Kates, Pearlman & Fitzgerald, attorneys; Mr. Pearlman, on the brief).
Gary J. Cucchiara, argued the cause for respondent City of Passaic (Nowell Amoroso Klein Bierman, attorneys, Hackensack; Gregory K. Asadurian, on the brief).
John R. Edwards, Jr., Woodcliff Lake, argued the cause for respondent-intervenor Wayne Asset Management, LLC (Price, Meese, Shulman & D'Arminio, attorneys; Mr. Edwards, on the brief).
Before Judges WEFING, PARKER and C.S. FISHER.
*1093 The opinion of the court was delivered by
*1094 PARKER, J.A.D.
In this condemnation action, a municipality, alleging that a parcel of private property was abandoned although the taxes were fully paid, exercised its power of eminent domain to take the private property and turn it over to a private entity to develop for profit. The private entity in this case was owned by a former city council member who allegedly sought to purchase the property for years before the condemnation.
Defendant Charles Shennett appeals from an order entered on May 31, 2005, vacating a report of commissioners dated August 27, 2004, and appointing a new panel of commissioners to reappraise defendant's property, but denying his motion to vacate a default judgment entered against him. We reverse and remand.
Defendant's family has owned the property at 254 Summer Street in Passaic since 1925, when it was purchased by defendant's aunt. In 1986, the aunt conveyed the property to defendant. Later that year, the house burned down and the lot remained vacant. Defendant continued to pay the property taxes until the end of 2004. When he did not receive a property tax bill for 2005, he made inquiries and discovered that the property had been transferred through a condemnation action to a third party, Wayne Asset Management, LLC (WAM). WAM is owned by former Passaic City Councilman, Wayne Alston (Alston).
In September 2003, the City of Passaic (City) filed a complaint for condemnation and sought an order to show cause why commissioners should not be appointed to appraise the property. The order to show cause was abandoned by the City without explanation, and on March 18, 2004  while defendant was still paying taxes on the property  the City sought a second order to show cause alleging that defendant's property was abandoned. The City claimed that its attempt to serve the owner by mail was returned by the post office with no forwarding address  notwithstanding the fact that the City consistently mailed tax bills to defendant's correct address. On May 5, 2004, an order was entered authorizing the City to acquire the property and appointing commissioners to appraise the land and fix compensation to be paid for the taking. Because defendant had no notice, he did not appear and the matter proceeded to default. On June 16, 2004, a default judgment was entered with a declaration of taking for the sum of $14,730. The City was ordered to deposit the money in court in order to take title to the property.
In an agreement originally dated June 9, 2004  before the default judgment was even entered  and amended to reflect the date of December 23, 2004, the Passaic Redevelopment Agency agreed to sell the property to WAM for $60,000-$45,000 more than the "just compensation" awarded for the condemnation. Defendant later attested that Alston had been trying to purchase the property for years but defendant told him the property "was not for sale."
On April 26, 2005, soon after defendant learned that the property had been condemned and transferred from his ownership, he moved, pursuant to R. 4:50-1, to (1) "vacate and set aside the [o]rder of May 5, 2004" authorizing the City to acquire the property and appoint commissioners to appraise it; (2) vacate the judgment entered on June 16, 2004, granting possession to the City; and (3) vacate the commissioner's report dated August 27, 2004, valuing the property at $14,730. In that motion, defendant maintained that (1) he was never personally served with process; (2) the property was not abandoned because he had continued to pay taxes on *1095 it through the end of 2004; (3) the $14,730 in "just compensation" for the taking was a misrepresentation of the value of the property that was sold to WAM for $60,000; and (4) he did not receive notice of the commissioners' hearing. The City cross-moved for counsel fees.
At oral argument on May 13, 2005, the City acknowledged that it never attempted to serve defendant personally. The City argued, however, that service had been made by mail and publication in the Herald News on April 8, 2004  seven months after the complaint was filed. The City further acknowledged that it had not met the requirements for service by mail or publication as set forth in Rules 4:4-3 and -4. Nevertheless, the City maintained that the default judgment could not be vacated because the property had been sold to WAM, which had already built a two-family house on it  less than five months after the agreement of sale was executed on December 23, 2004. The City allowed, however, that a new commissioners' hearing should be scheduled to determine "just compensation" for the property. The trial judge agreed.
In an order entered on May 31, 2005, the court granted defendant's motion to vacate the earlier commissioners' report valuing the property at $14,730 and appointed new commissioners to reevaluate the property, but denied defendant's application to vacate the earlier court orders authorizing the condemnation, appointing commissioners and granting the default judgment.
On August 29, 2005, WAM filed a "Complaint In Intervention to Quiet Title," seeking to confirm that defendant "has no title to, nor interest in, nor encumbrance upon the Property."
On September 26, 2005, the new commissioners met. This time, defendant received notice and submitted an appraisal for the commissioners' consideration. The commissioners determined that "just compensation" for the property was $78,000. Defendant received the commissioners' report on October 3, 2005, and filed this appeal on November 14, 2005, challenging the May 31, 2005 order.
Defendant now argues that (1) the orders entered on May 5, 2004 appointing the first panel of commissioners and June 16, 2004 granting title to the City are void because defendant was never served; (2) he is entitled to have the orders of condemnation vacated under R. 4:50-1; (3) the City had no right to condemn the property because it was not abandoned and its failure to serve defendant with an offer of purchase is fatal to the condemnation procedure; and (4) the transfer of title to WAM should not prevent the court from vacating the orders of condemnation.
Although the City has not cross-appealed, it argues initially that the appeal should be dismissed on the ground that defendant did not file a notice of appeal within forty-five days of the May 31, 2005 order, rendering it untimely. The City maintains that defendant has standing only to challenge the compensation paid for the taking. We disagree under the circumstances of this case, where the court declined to consider defendant's motion to vacate the condemnation proceeding from the outset. Overlooking the due process issues, the court stated:
The best [defendant] is going to get, if [the City has] a right to condemn, and municipalities have broad power for condemning for eminent domain, he would have to upset the whole Redevelopment Plan in a lawsuit. He would have to upset [the City's] power of condemnation, [the City's] right to condemn, which is difficult.

*1096 [Defendant] would have to start a suit against the ultimate buyer, who appears to be a buyer in good faith. It might be a buyer in good faith; I don't know enough to say. That's two lawsuits, plus the condemnation action, plus the appeals that will ensue.
While ordinarily a judgment appointing commissioners "is considered a final judgment, which may be appealed as of right," under the egregious circumstances of this case, we grant leave to appeal out of time. State v. Hess Realty Corp., 226 N.J.Super. 256, 261, 543 A.2d 1050 (App.Div.1988), aff'd, 115 N.J. 229, 557 A.2d 1372 (1989).
Notwithstanding its initial argument that the appeal should be dismissed as untimely because it should have been filed within forty-five days of the May 31, 2005 order, the City also argues that the appeal is interlocutory because the intervenor's complaint has not been adjudicated. This argument lacks sufficient merit to warrant further discussion in this opinion. R. 2:11-3(e)(1)(E). Nevertheless, we note that the intervenor's suit to quiet title cannot proceed until the matter before us is resolved and a final determination is made as to whether the City properly acquired title, before title was transferred to WAM.
With respect to defendant's arguments, we find that he was not properly served with the offer to purchase the property, a prerequisite to a condemnation complaint pursuant to N.J.S.A. 20:3-6; nor was he properly served with the complaint and order to show cause filed by the City on March 18, 2004, or a notice of the commissioners' hearing as required by N.J.S.A. 20:3-12(c).
N.J.S.A. 20:3-6 requires the municipality to engage in
bona fide negotiations with the prospective condemnee, which negotiations shall include an offer in writing by the condemnor to the prospective condemnee. . . setting forth the property and interest therein to be acquired, the compensation offered to be paid and a reasonable disclosure of the manner in which the amount of such offered compensation has been calculated, and such other matters as may be required by the rules.
Only "[w]hen the holder of the title is unknown, resides out of the State, or for other good cause, . . . may [the court] dispense with the necessity of such negotiations." Ibid.
Here, the City had only to examine its tax rolls to determine the owner  and his correct address for service of an offer of purchase  but it failed to do so and it failed to provide the requisite notice of condemnation pursuant to N.J.S.A. 20:3-6.
We know that the purpose of the Legislature in enacting N.J.S.A. 20:3-6 was, as stated by the Eminent Domain Revision Commission, to encourage entities with condemnation powers to make acquisitions without litigation. Such a procedure thereby saves both the acquiring entity and the condemnee the expenses and delay of litigation. It permits the landowner to receive and keep full compensation. This purpose is furthered by strict construction of N.J.S.A. 20:3-6. If a condemnor may ignore the statute and later cure the proceedings, the purpose of N.J.S.A. 20:3-6 will be completely frustrated. Indeed, an order for a stay so that a condemnor may then do what it should have done earlier will encourage noncompliance with N.J.S.A. 20:3-6. A condemnor will know that if it does not comply, it may nevertheless proceed.
[Borough of Rockaway v. Donofrio, 186 N.J.Super. 344, 353-54, 452 A.2d 694 (App.Div.1982), certif. denied, 95 N.J. 183, 470 A.2d 409 (1983).]
*1097 Moreover, "[c]ompliance with the prelitigation requirements of the statute is jurisdictional, and failure of the condemnor to comply with [them] will result in dismissal of the complaint." Casino Reinvestment Dev. Auth. v. Katz, 334 N.J.Super. 473, 481, 759 A.2d 1247 (Law Div. 2000) (citing Borough of Rockaway, supra, 186 N.J.Super. at 354, 452 A.2d 694). A condemnation complaint must be dismissed when the government entity fails to comply with the pre-condemnation requirements. City of Atl. City v. Cynwyd Invs., 148 N.J. 55, 69, 689 A.2d 712 (1997) (citing Monmouth County v. Whispering Woods at Bamm Hollow, Inc., 222 N.J.Super. 1, 535 A.2d 968 (App.Div.1987), certif. denied, 110 N.J. 175, 540 A.2d 173 (1988)).
We cannot, therefore, overlook the City's noncompliance with N.J.S.A. 20:3-6. Since the prerequisites are jurisdictional, the trial court lacked authority to act on the condemnation complaint.
The court also lacked jurisdiction over defendant and the authority to enter judgment affecting his rights or property, because defendant was not properly served with process. R. 4:4-4(a). Personal service is the primary method of service in New Jersey. R. 4:4-3; -4. If personal service cannot be effectuated "after a reasonable and good faith attempt," other methods are available. R. 4:4-3. A party's good faith effort to personally serve a defendant must be "described with specificity in the proof of service." R. 4:4-3; -7. Here, the City acknowledges that it never even attempted personal service on defendant  notwithstanding the fact that it had his proper address for sending the tax bills.
The City claims that it served defendant by certified and ordinary mail and, since the certified mail was returned unclaimed but the ordinary mail was not, service was sufficient under R. 4:4-3. Service by mail is not effective, however, unless plaintiff first made "a reasonable and good faith attempt" to serve defendant personally. R. 4:4-3(a). Even if mail service were warranted here, the record indicates that the address on the mailed envelopes was incomplete  defendant's apartment number was omitted. The City clearly had knowledge of defendant's correct address because it was included in the tax bills.
The City further claims it made service by publication on April 8, 2004, eight days before the return date on the order to show cause. Rule 4:67-3, however, requires service of an order to show cause ten days before the return date in the manner prescribed by Rules 4:4-3 and -4, unless a party has leave of court to give shorter notice. Here, the City did not have leave of court for shorter notice, nor had it made the prerequisite "reasonable and good faith attempt" to personally serve defendant. R. 4:4-3(a). Service by publication is permitted "[w]henever, in actions affecting specific property, or any interest therein . . . it shall appear by affidavit of the plaintiff's attorney or other person having knowledge of the facts, that a defendant cannot, after diligent inquiry, be served within the State." R. 4:4-5 (emphasis added). Moreover, service by publication must be followed
by mailing, within [seven] days after publication, a copy of the notice as herein provided and the complaint ... to the defendant's residence or the place where the defendant usually receives mail, unless it shall appear by affidavit that such residence or place is unknown, and cannot be ascertained after inquiry as herein provided.
[R. 4:4-5(c).]
None of that occurred in this case.
On defendant's motion to vacate the default judgment, the trial court acknowledged that:

*1098 [T]he Complaint and Order to Show Cause were not served in accordance with the Order to Show Cause and not served in accordance with the Rules of Court. It seems that no attempt was made at personal service whatsoever. The other modes are available only whereby diligent inquiry you could not serve personally.
The court went on to note that the City did not even provide timely service by publication, nor did the City provide adequate notice of the commissioner's hearing in August 2004, as required by N.J.S.A. 20:3-12(c). Nevertheless, the trial court declined to vacate the default judgment.
The commissioners' hearings are governed by N.J.S.A. 20:3-12(c), which requires the commissioners to hold hearings "[u]pon notice of at least [ten] days . . . at which the parties and their witnesses may be heard[,] under oath." Notice of the hearings "must fairly apprise the condemnee of the appeal-preclusion consequence of the condemnee's failure to appear at the hearing." Borough of Keyport v. Maropakis, 332 N.J.Super. 210, 213, 753 A.2d 154 (App.Div.2000). N.J.S.A. 20:3-5 vests jurisdiction in the court "to determine the authority to exercise the power of eminent domain," and N.J.S.A. 20:3-7(a) provides that "[t]he procedure governing the [condemnation] action shall be in accordance with the rules." (Emphasis added).
Due process requires that a default judgment be vacated for lack of personal jurisdiction. Peralta v. Heights Med. Ctr., Inc., 485 U.S. 80, 86, 108 S.Ct. 896, 899-900, 99 L.Ed.2d 75, 81-82 (1988); Jameson v. Great Atl. & Pac. Tea Co., 363 N.J.Super. 419, 425, 833 A.2d 626 (App. Div.2003), certif. denied, 179 N.J. 309, 845 A.2d 134 (2004).
"The critical components of due process are adequate notice, opportunity for a fair hearing and availability of appropriate review." Schneider v. City of [E.] Orange, 196 N.J.Super. 587, 595 483 A.2d 839 (App.Div.1984), aff'd [] 103 N.J. 115, 510 A.2d 1118, cert. denied, 479 U.S. 824, 107 S.Ct. 97, 93 L.Ed.2d 48 (1986) (emphasis added); see also [Dep't] of [Cmty.] Affairs v. Wertheimer, 177 N.J.Super. 595, 599, 427 A.2d 592 (App.Div.1980). "`Due process of law' includes reasonable notice of the nature of the proceeding and a fair opportunity to be heard therein." Weiner v. County of Essex, 262 N.J.Super. 270, 287 620 A.2d 1071 (Law Div.1992) (emphasis added). "The fundamental requisite of notice involves `such notice as is in keeping with the character of the proceedings and adequate to safeguard the right entitled to protection.'" Wertheimer, supra, 177 N.J.Super. at 599, 427 A.2d 592 (quoting State v. Standard Oil Co., 5 N.J. 281, 305, 74 A.2d 565 (1950), aff'd [] 341 U.S. 428, 71 S.Ct. 822, 95 L.Ed. 1078 (1951)).
[Borough of Keyport, supra, 332 N.J.Super. at 220-21, 753 A.2d 154.]
"Fundamentally, due process requires an opportunity to be heard at a meaningful time and in a meaningful manner." Doe v. Poritz, 142 N.J. 1, 106, 662 A.2d 367 (1995) (citing Kahn v. United States, 753 F.2d 1208, 1218 (3d Cir.1985)). That is precisely what defendant did not have. In denying defendant's motion to vacate the default judgment, the trial court merely reconvened a new panel of commissioners to assess just compensation for the already-taken property. Under the circumstances presented here, that is an inadequate remedy. Defendant must be provided with "an opportunity to be heard at a meaningful time and in a meaningful manner." Ibid. That is, he must be given the opportunity to challenge the City's authority *1099 to condemn as well as its authority to set just compensation.
Here, the City (1) failed to provide the pre-condemnation notice required by N.J.S.A. 20:3-6; (2) failed to even attempt personal service of the complaint and order to show cause; (3) failed to comply with the Rules of Court for alternate service by mail and publication; (4) failed to serve notice of the commissioners' hearings required by N.J.S.A. 20:3-12(c); (5) alleged that the property was "abandoned" when the taxes were fully paid; and (6) entered into a contract to sell the property to a private entity owned by a former city council member  for four times the amount originally assessed by the commissioners as "just compensation." Without due process, the default judgment is void. Peralta, supra, 485 U.S. at 86, 108 S.Ct. at 899-900, 99 L.Ed.2d at 81-82.
Rule 4:50-1(d) provides for vacation of a void judgment or order. A void judgment is not subject to the one year limitation of R. 4:50-2, but is subject to the "reasonable time" limit under the rule. Defendant need not show excusable neglect, or even fraud or misrepresentation when the judgment is void for failure of process. M & D. Assocs. v. Mandara, 366 N.J.Super. 341, 353, 841 A.2d 441 (App.Div.), certif. denied, 180 N.J. 151, 849 A.2d 184 (2004); see Jameson, supra, 363 N.J.Super. at 425, 833 A.2d 626.
In exercising their powers of eminent domain, government entities must strictly comply with the rules and statutes governing condemnation. The circumstances here are so egregious that no remedy will suffice but to void the judgment and require the City to properly serve defendant with the requisite pre-condemnation notice pursuant to N.J.S.A. 20:3-6 and proceed from that point forward in accordance with the rules and statutes governing condemnation proceedings.
The intervenor has not cross-appealed but nevertheless argues that (1) the May 31, 2004 order was final and defendant failed to appeal timely; (2) defendant failed to seek relief within one year of the final order barring his right to recovery; and (3) the appeal is interlocutory because its complaint to quiet title has not been adjudicated. We have addressed each of these issues previously and need not revisit them here. R. 2:11-3(e)(1)(E).
Reversed and remanded for proceedings in accordance with this opinion.