222 N.J. Super. 560 (1988)
537 A.2d 752
COUNTY OF MORRIS, PLAINTIFF-APPELLANT,
v.
WAYNE H. WEINER, PAUL H. WEINER, THE TOWN OF MORRISTOWN, GLENN K. COUTTS AND ELEANOR H. COUTTS, HIS WIFE, FIRST MORRIS BANK, A NEW JERSEY CORPORATION, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued January 12, 1988.
Decided February 18, 1988.
*562 Before Judges ANTELL, DEIGHAN and LANDAU.
Herbert M. Strulowitz, Assistant County Counsel, argued the cause for appellant (Armand L. D'Agostino, Morris County Counsel, attorney for appellant; Herbert M. Strulowitz, Assistant County Counsel, on the brief).
Harry J. Riskin argued the cause for respondents Weiner (McKirdy and Riskin, attorneys; Harry J. Riskin and Thomas Olson, on the brief).
No other respondent has filed a brief in this proceeding.
The opinion of the court was delivered by ANTELL, P.J.A.D.
In this condemnation action plaintiff appeals from an order of the Law Division which dismissed the complaint on the ground that plaintiff, prior to instituting suit, had not first attempted to acquire the property through "bona fide negotiations" as required by N.J.S.A. 20:3-6. We agree with the determination under review and affirm.
*563 The material facts are undisputed. Defendants Weiner (hereinafter "defendants") are the owners of an improved parcel of land on the south side of Court Street, across from the County Court House, in the Town of Morristown. Around July 23, 1984 they were notified of plaintiff's interest in acquiring the property by a real estate appraiser from the firm of Krauser, Welsh, Sorich and Cirz who had been retained by plaintiff to conduct an inspection and appraisal thereof. Although the property was thereafter inspected, nothing further was heard from the appraiser or from the plaintiff in connection therewith. No written appraisal was received and no offer was made to defendants. It appears, however, that the same appraiser had appraised the adjoining property at 8 Court Street for $375,000, or approximately $100 per square foot. On this basis defendants contend that their property merited an appraisal of approximately $380,000.
Some time later, probably during the early part of 1986, the property was reinspected by another appraiser, Sidney M. Schwarz, and his appraisal determining the value of the property to be $255,000, was transmitted to plaintiff around May 9, 1986. On August 15, 1986 plaintiff wrote to defendants that it desired to acquire the property and that in preparation for negotiations, inspections had been made. An offer to purchase was made for the sum of $255,000. The Schwarz appraisal accompanied the letter. The letter closed by stating that if the offer was acceptable to defendants, the county counsel "would be pleased to meet with you and your counsel within the next 20 days to attempt to purchase this property by negotiation." It closed by saying that if defendants did not respond within 20 days the writer of the letter "will assume that the offer is rejected and that no further negotiations would be meaningful. The County will have no alternative but to institute condemnation proceedings to acquire the property."
Approximately one month later, on September 16, 1986, defendants' attorney wrote to county counsel and indicated that *564 his letter had been received while defendant's attorney was on vacation. The letter also indicated that the County's offer "is so out of line that I do not know whether any negotiations would be fruitful." It noted that in May 1986 defendants had taken a mortgage loan on the property from the First Morris Bank in the amount of $400,000 pursuant to the bank's $535,000 appraisal of the property. The letter further stated that there had been a contract of sale in March 1986 for the purchase of the property in the amount of $530,000, the transaction not being consummated because of the threatened condemnation action by the County. The letter closed by saying that "[t]he County, to date, has not satisfied any bona fide negotiation criteria. If the County wishes to acquire this property on the basis of a realistic appraisal, please contact me." Three days later plaintiff instituted suit.
The language of N.J.S.A. 20:3-6 material to this proceeding is as follows:
[N]o action to condemn shall be instituted unless the condemnor is unable to acquire such title or possession through bona fide negotiations with the prospective condemnee, which negotiations shall include an offer in writing by the condemnor to the prospective condemnee holding the title of record to the property being condemned, setting forth the property and interest therein to be acquired, the compensation offered to be paid and a reasonable disclosure of the manner in which the amount of such offered compensation has been calculated, and such other matters as may be required by the rules. Prior to such offer the taking agency shall appraise said property and the owner shall be given an opportunity to accompany the appraiser during inspection of the property. Such offer shall be served by certified mail. In no event shall such offer be less than the taking agency's approved appraisal of the fair market value of such property. A rejection of said offer or failure to accept the same within the period fixed in written offer, which shall in no case be less than 14 days from the mailing of the offer, shall be conclusive proof of the inability of the condemnor to acquire the property or possession thereof through negotiations.
As the Law Division judge observed, furnishing the condemnee with a copy of the appraisal is merely the minimum threshold to good faith negotiations; without it, there can be no appreciation by the condemnee of the value basis on which the offer is made. See State v. Hancock, 208 N.J. Super. 737, 742 (Law Div. 1985), aff'd 210 N.J. Super. 568 (App.Div. 1985). The condemning authority's *565 obligation to conduct good faith negotiations does not end with the furnishing of a written appraisal. The defendants' response to plaintiff's offer was supported by concrete and highly credible evidence that the property was worth substantially more than the amount offered. Having in mind the customary conservatism of banks in appraising property for mortgage loan purposes, the recent mortgage loan of $400,000 based on an appraisal of $535,000 and the sales contract of $530,000 clearly obligated plaintiff to reconsider its offer of $255,000. At the least, it should have taken the opportunity to meet with defendants and study the details of the mortgage loan and the contract.
The purpose of the statute is to encourage public entities to acquire property without litigation where possible, thereby saving both the public and the condemnee the expense and delay of court action and permitting the condemnee to receive and keep the full compensation due him. Rockaway v. Donofrio, 186 N.J. Super. 344, 353-354 (App.Div. 1982). Although defendants wrote from an adversarial stance in referring to plaintiff's offer as "out of line," they were using the language of negotiation and invited further discussion based on a reasonable expectation that plaintiff would take a more "realistic" view of the property's worth. Upon receiving defendant's advice, the process of educating the condemning authority, see State v. Hancock, supra, 208 N.J. Super. at 743, should have begun, and it was incumbent upon plaintiff to ask how it was conceivable for a bank to lend $400,000 on the security of a property which plaintiff had appraised at only $255,000. Its action instituting condemnation proceedings immediately upon receipt of defendants' response was incompatible with its obligation to negotiate.
Plaintiff also contends that the failure of defendants' attorney to accept the offer within the 20 days limited by plaintiff's letter was, in the words of the statute, "conclusive proof of the inability of the condemnor to acquire the property or possession thereof through negotiation." But we cannot *566 reconcile plaintiff's interpretation of the foregoing language with the statute's clear mandate for "bona fide negotiations." If plaintiff's argument is valid no more is required of an agency than the presentation of an offer on a take-it-or-leave-it basis. But in our view, to say that the law requires no more than that a condemning authority make an offer and state a time period for acceptance or rejection would simply eviscerate the bona fide negotiations requirement from the statute.
While plaintiff has performed those items which the statute specifies "negotiations shall include," these do not express the full scope of a condemning authority's duty to negotiate, and, as we have said, plaintiff's performance herein fell short of meeting that duty. We conclude that the "conclusive proof" rule can be applied harmoniously with the purpose of the statute only where the written offer is preceded by bona fide negotiations which the offer purports to resolve. It was not intended to apply where, as here, the written offer can serve no purpose other than to open negotiations, a process which implies an offer, an acceptance or rejection and a counter offer.[1] Defendants' reply thereto was received only 10 days after the time specified by plaintiff and before the institution of suit. It left no doubt that the selling price of the property was open to discussion, and under those circumstances plaintiff's failure to follow up on defendants' request to "please contact me" bars treatment of defendants' failure to accept the offer as conclusive proof that plaintiff was unable to acquire the property through negotiation.
We realize that our resolution of this conflict within the statute between the conclusive proof rule and the requirement for bona fide negotiations does not leave the enactment problem-free. *567 Cases will undoubtedly arise in which invitations by a condemning authority to negotiate are ignored or tardily answered, and courts will have to determine the point at which the condemnor's invitation matures into an attempt to acquire the property through bona fide negotiations. Ideally, such an inquiry could be simplified if the rights and duties of the parties in setting the stage for negotiations were legislatively defined with consequences similar to those provided under the rule of conclusive proof. However, lacking the kind of certainty such a solution could provide, the question will have to be answered case-by-case, based on the particular facts presented.
Affirmed.
NOTES
[1] State v. Rowland, 183 N.J. Super. 558, 568 (Law Div. 1982), held that such a view of "negotiations" did not apply to the concept as set forth in the Eminent Domain Act. However, that opinion was expressly disapproved in State v. Hancock, 210 N.J. Super. 568, 569 (App.Div. 1985), aff'g 208 N.J. Super. 737 (Law Div. 1985).