905 A.2d 880 (2006)
388 N.J. Super. 1
CITY OF ASBURY PARK, a Municipal Corporation of the State of New Jersey, Plaintiff-Respondent,
v.
ASBURY PARK TOWERS, Defendant-Respondent, and
The Presbyterian Home of Asbury Park; New Jersey Housing Finance Agency; the City of Asbury Park Sewerage Authority; the City of Asbury Park; and the State of New Jersey, Defendants.
Asbury Partners, LLC, Appellant.
Nos. A-1520-05T1, A-1167-05T1.[1]
Superior Court of New Jersey, Appellate Division.
Argued: June 6, 2006.
Decided: August 8, 2006.
*881 Martin L. Borosko, argued the cause for appellant (Becker Meisel, attorneys, Livingston; Mr. Borosko, of counsel; Daniel L. Pascoe, on the brief).
John H. Buonocore, Jr., Morristown, argued the cause for respondent, Asbury Park Towers (McKirdy and Riskin, attorneys; Mr. Buonocore, of counsel and on the brief).
No brief was filed on behalf of respondent City of Asbury Park.
Before Judges SKILLMAN, AXELRAD and PAYNE.
The opinion of the court was delivered by
AXELRAD, J.T.C. (temporarily assigned).
This appeal raises the issue of whether a private entity that is contractually obligated to pay the amount of a condemnation award is entitled to intervene as a party in the condemnation action and participate in a plenary manner in the valuation proceedings. The private entity in this case is appellant, Asbury Partners, LLC, which has contracted with the City of Asbury Park (the "City") to redevelop the City's waterfront. We hold that Asbury Partners may not intervene as of right pursuant to Rule 4:33-1, because it has made no showing that the condemning authority does not adequately represent its interest. We further hold there was no abuse of discretion in the denial of permissive intervention pursuant to Rule 4:33-2. Accordingly, we affirm the order of the Law Division judge denying intervention in the condemnation action.
The City, which had been a thriving seaside community, declined physically and economically in the second half of the twentieth century following the growth of the suburbs, the development of shopping malls and the completion of the Garden State Parkway in the 1950s, which made it easier to by-pass the City. In November 1984, following an investigation and the conclusion that the twenty-eight block oceanfront area extending generally from Wesley Lake to Deal Lake was blighted and in need of renewal, the City adopted an ordinance approving a waterfront redevelopment plan. The first plan did not succeed and was amended, but that plan *882 was also unsuccessful because the developer filed for bankruptcy in 1992. All work in the redevelopment area then ceased.
On June 5, 2002, the City adopted by ordinance a new Waterfront Redevelopment Plan ("WRP"), a long-term, comprehensive plan to redevelop the blighted waterfront, with the projects designed to be accomplished through a master developer.
On October 28, 2002, the City and Asbury Partners entered into an Amended and Restated Developer and Land Disposition Agreement ("Redeveloper Agreement"), which designated Asbury Partners the Master Developer of the WRP. The Redeveloper Agreement sets forth the obligations of both parties and provides a framework for implementation of the WRP. Pursuant to the Redeveloper Agreement, Asbury Partners is obligated to acquire properties necessary for implementation of the WRP and, if Asbury Partners is unsuccessful in negotiating the purchase, the City is obligated to acquire by eminent domain any required parcels. Both parties are obligated to "[a]ssist with and participate in a coordinated defense in the event of litigation," and the City is obligated to "[u]tilize the right of eminent domain on behalf of [the] Master Developer and in connection therewith retain specific appraisers to be approved by the Master Developer."
Pursuant to the Redeveloper Agreement, Asbury Partners bears all of the costs of the land acquisition process, including the purchase price of the assembled parcel and all the costs associated with either negotiating or condemning the property, including reimbursing the City for all costs it incurs. Asbury Partners is also obligated to fund and undertake the major reconstruction of the City's infrastructure required to implement the WRP. According to the certification filed in the trial court, Asbury Partners and its predecessors in interest have already expended approximately $33 million in furtherance of the City's overall redevelopment to procure the redevelopment rights from the City, assemble land for development[2] and assist the City in the WRP's implementation.
Respondent Asbury Park Towers is the owner of Block 208, Lot 3, a vacant lot located at 1611 Ocean Avenue in Asbury Park. The property is in the R-5 (Multifamily High Density) Waterfront Redevelopment Zone. It was previously used as a parking lot serving the nearby twenty-six-story Asbury Tower apartment building, which is not in the Redevelopment zone. Pursuant to the Redeveloper Agreement, the block comprising the former Monterey Hotel property, which includes Block 208, Lot 3, was given priority and placed on the "fast track" for development under the WRP. Accordingly, in November 2003, Asbury Partners attempted negotiations with Asbury Park Towers for acquisition of the vacant lot. Private negotiations were unsuccessful, and Asbury Partners requested that the City acquire the land by eminent domain.
With consent of Asbury Partners, the City retained Donald M. Moliver to appraise Block 208, Lot 3. Following unsuccessful negotiations with the owner, the City filed a condemnation complaint on July 1, 2005. On July 7, 2005, the trial judge signed an order requiring the City to deposit the $240,000 appraised value of the subject property into court and scheduled the return date of the order to show cause conferring jurisdiction for the acquisition of the property and the appointment of commissioners to fix the compensation. Asbury Towers filed an answer denying *883 the City's authority to condemn on the ground that it failed to engage in bona fide negotiations as required by N.J.S.A. 20:3-6 and that the acquisition of the parcel was not necessary for redevelopment purposes.
Asbury Partners moved to intervene in all aspects of the case, claiming it had a unique and unprotected interest.[3] The City did not object to the intervention.
Following oral argument on the order to show cause and intervention motion, the Law Division judge determined that the City had engaged in bona fide negotiations pre-litigation and had duly exercised its authority to condemn. He also found the public need for the subject property had been demonstrated by the City's WRP. He entered an order to that effect and fixed the date of valuation and appointed commissioners. In an unpublished opinion being filed contemporaneously with this opinion, we affirm that decision. City of Asbury Park v. Asbury Park Towers, No. A-1235-05, 2006 WL 2590305 (N.J.Super.App.Div.).
The judge also denied Asbury Partners' motion to intervene as of right, R. 4:33-1, and permissively, R. 4:33-2. He found the profit-making interest of the private developer in paying the lowest price for the assembled parcel may differ from the City's obligation to deal forthrightly with the property owner and pay the fair market value, such that Asbury Partners' interest in the proceeding may not be fully protected by the City. He concluded, however, that intervention was inappropriate because of the City's responsibility to the public and because of the legislative mandate that the City, not the redeveloper, act as the condemning authority. This appeal followed.
Asbury Partners contends the trial court lacked discretion to deny its motion to intervene after finding it satisfied the four criteria for intervention as of right,[4] and, alternatively, abused its discretion when it denied permissive intervention. Asbury Partners submits it has a unique unprotected interest in defeating the attacks on the City's authority to take the subject parcel and assuring the WRP is implemented. Although Asbury Partners acknowledges the City has an interest in the success of the redevelopment efforts, it urges that the City, which it contends has made little direct financial investment in the WRP, does not share its concern about recovering its tremendous financial investment and returning a profit.
Moreover, Asbury Partners contends it is the only party that has a direct interest in ensuring that the price of the condemned parcel does not exceed its fair market value because the City has no financial interest in the outcome and "could care less how much it pays to take the property." In fact, according to Asbury Partners, a "cogent argument could be made that the City might have political incentive not to aggressively contest the fair market value of the land since not *884 doing so will have no financial impact upon the City but might please constituents."
Asbury Partners contends also that denial of intervention leaves private developers who fund redevelopment projects without any ability to protect their significant financial interest in the outcome of condemnation proceedings. It posits that the ruling will have a chilling effect on the desire of private entities to partner with local governments and will hinder future redevelopment efforts. It argues such ruling will also encourage disputes, such as breach of contract suits, to be litigated in multiple forums if the redeveloper is not satisfied with the outcome of the condemnation proceedings.
Although it is undisputed that Asbury Partners, as the Master Developer, has a significant stake in this specific acquisition as well as in the successful implementation of the WRP, we are satisfied that the interest of the redeveloper is adequately represented by the condemning authority in the valuation proceedings. Accordingly, Asbury Partners does not satisfy the criteria for intervention as of right. R. 4:33-1. Moreover, we discern no abuse of discretion by the Law Division judge in denying permissive intervention. R. 4:33-2.
Contrary to Asbury Partners' contention, it is not the only party interested in aggressively defending the WRP and the right to acquire the subject parcel, and doing so by paying fair market value. The City clearly has a vested interest in redeveloping its waterfront and has over the years demonstrated its commitment to taking whatever steps are necessary to implement the WRP, including participation in substantial litigation.
The City has more than adequately represented Asbury Partners' interests thus far in connection with the subject acquisition. Pursuant to the Redeveloper Agreement, the City retained a mutually acceptable appraiser, proceeded with bona fide negotiations under the Eminent Domain statute and, when the discussions were unsuccessful, filed this condemnation action. Thereafter, the City zealously and successfully opposed, both before the trial court and on appeal, Asbury Park Towers' challenges to the condemnation, including the City's authority to condemn based on a claimed failure to engage in bona fide negotiations. Pertinent to this intervention application, the landowner had alleged that the City's appraisal was fatally flawed because it did not provide for severance and consequential damages to the apartment building lot caused by the acquisition of the parking lot, and thus it substantially undervalued the condemned parcel. We affirmed the City's authority to condemn, leaving valuation as the sole issue remaining in the condemnation action. Therefore, the issues pertaining to defending the WRP and the right to acquire the subject parcel are finally resolved, thus Asbury Partners' arguments for intervention respecting these issues are moot.
In an eminent domain proceeding, the condemnor's obligation is to pay "just compensation" for the property obtained, which is defined as "the fair market value of the property as of the date of the taking, determined by what a willing buyer and a willing seller would agree to, neither being under any compulsion to act." State, by Comm'r of Transp. v. Silver, 92 N.J. 507, 513, 457 A.2d 463 (1983); Deland v. Twp. of Berkeley Heights, 361 N.J.Super. 1, 21, 824 A.2d 185 (App.Div.), certif. denied, 179 N.J. 185, 843 A.2d 1152 (2003). Determining the fair market value of a parcel is not a science, but rather it involves an estimation based on a number of variables. During the condemnation process, there will be an exchange of information and appraisals. A recommendation *885 will then be made by the appraiser, jointly selected by the City and Asbury Partners, as to whether the subject lot should continue to be valued as a "stand alone" parcel or whether the apartment lot parcel and condemned parcel form a unity of use such that there is a partial taking requiring additional compensation to the landowner. If the City accepts the landowner's position, the City's appraiser will analyze the relevant factors and calculate the appropriate amount of severance and consequential damages.
As often occurs in condemnation actions, there undoubtedly will be negotiations between the parties, and there may be compromise or settlement at some point in the litigation. That does not mean in doing so the City is not adequately representing Asbury Partners' interest. The parties' interests are reflected in the Redeveloper Agreement, which implicitly recognizes the inherently different nature of the roles of the private developer and the public entity in the redevelopment process. That agreement anticipates a long-term partnership to redevelop the waterfront through the acquisition of assembled parcels by private purchase or eminent domain. It encompasses far more than this single parcel. Although the redeveloper may be able to project the acquisition costs of the assembled parcels, there are clearly many variables that make it impractical to set a bright-line fair market value for each parcel at the outset of the process. It also appears, in a project of this magnitude, that it is not feasible or advantageous to either party for the redeveloper to micro-manage the proceedings once the matter is turned over to the condemning authority. Therefore, as experienced entities, the City and Asbury Partners negotiated a comprehensive Redeveloper Agreement that assigned to each party different roles in the acquisition process and required mutual cooperation, without hampering either party's ability to effectively act. It was plainly contemplated in the agreement that, in the event of a failed effort by Asbury Partners to acquire the property privately, the City's role would be triggered to prosecute an eminent domain proceeding and the redeveloper would "assist with and participate in a coordinated defense." In that proceeding, the City bound itself to use the services of an appraiser approved by Asbury Partners. It has done so.
Just as the Redeveloper Agreement only requires the parties to participate in a coordinated defense and does not require consensus on every issue, intervention as of right is not triggered merely because the parties do not see eye-to-eye on every aspect of the litigation. Rather, Rule 4:33-1 requires intervention, assuming the other criteria are met, only if the movant's interest is not "adequately represented" by the existing parties.
Although there may be instances in which a redeveloper, such as Asbury Partners, believes a breach of contract action against the City for failing to exercise its responsibilities in good faith under the Redeveloper Agreement is necessary, we do not perceive that the floodgates will be opened to such actions if intervention is denied in valuation proceedings. We note that the City's obligation to "turn square corners" in dealing with the public, F.M.C. Stores Co. v. Borough of Morris Plains, 100 N.J. 418, 426, 495 A.2d 1313 (1985), encompasses a similar good faith obligation to carry out its contractual obligations with Asbury Partners and involves not just this single parcel, but a significant number of properties designated for redevelopment. We also presume that a public entity of this State will act diligently, responsibly and honorably. We have recognized that "[t]here is a prima facie presumption *886 that the power and discretion of governmental action has been properly exercised." Miller v. Passaic Valley Water Comm'n, 259 N.J.Super. 1, 14, 611 A.2d 128 (App.Div.), certif. denied, 130 N.J. 601, 617 A.2d 1222 (1992); Grundlehner v. Dangler, 51 N.J.Super. 53, 61, 143 A.2d 192 (App.Div.1958), modified, 29 N.J. 256, 148 A.2d 806 (1959). Moreover, the "good faith of public officials is to be presumed; their determinations are not to be approached with a general feeling of suspicion." Miller, supra, 259 N.J.Super. at 14, 611 A.2d 128 (citing Ward v. Scott, 16 N.J. 16, 23, 105 A.2d 851 (1954)). We also note that when a redeveloper negotiates an acquisition it is held to the same or similar standards as the condemning authority. Jersey City Redevelopment Agency v. Costello, 252 N.J.Super. 247, 257, 599 A.2d 899 (App.Div.), certif. denied, 126 N.J. 332, 598 A.2d 890 (1991).
Asbury Partners has provided no factual basis to support its speculative and conclusory assertion that the City might not seek to acquire the subject parcel at the best price obtainable within the legal parameters of the fair market value requirements in condemnation proceedings. As stated, private and public entities are held to the same standard in dealing with property owners in the acquisition of redevelopment properties. In the absence of a clear showing, by specifically articulated facts, of conduct by the public entity that palpably evinces a derogation of its fiduciary responsibilities, there is no basis upon which to conclude that the interest of the redeveloper is not adequately represented in these valuation proceedings. No such showing has been made here.
We are also not persuaded that the trial court abused its discretion in denying Asbury Partners permissive intervention in the condemnation proceeding. We are concerned with the potential for undue delay or prejudice to the rights of the City and the condemnee if intervention were permitted. R. 4:33-2 ("In exercising its discretion the court shall consider whether the [permissive] intervention will unduly delay or prejudice the adjudication of the rights of the original parties."). There is a significant difference between intervening at an appellate level to advance arguments on behalf of uniquely interested parties, such as occurred in Mt. Laurel Twp. v. Stanley, 185 N.J. 320, 885 A.2d 440 (2005) and Casino Reinvestment Dev. Auth. v. Hauck, 162 N.J. 576, 745 A.2d 1163 (2000),[5] to argue in support of an interpretation of law, and intervening at the trial level as an interested party. This is not merely a situation where the trial judge could control the proceedings so that Asbury Partners' participation was not cumulative and Asbury Park Towers was not "double-teamed." If permitted to intervene, Asbury Partners would not only be able to participate in the plenary proceedings, but would also have the ability to reject a settlement and would be able to withhold consent to a stipulation of dismissal *887 of the condemnation action. R. 4:37-1.
This was surely not the intention of the Legislature when it provided that a municipality or redevelopment entity, not a redeveloper, was the sole entity entrusted with the authority to acquire land by condemnation to carry out a redevelopment plan. See Redevelopment and Housing Law, N.J.S.A. 40A:12A-8(c). Moreover, affording party status in a condemnation proceeding to an entity that is merely contractually obligated to pay the condemnation award, and has no interest in the land or its components, would fly in the face of the Eminent Domain statute, court rules and case law. See N.J.S.A. 20:3-2(c) (defining "condemnee" as "owner of an interest in the private property being condemned for a public purpose under the power of eminent domain"); N.J.S.A. 20:3-2(d) (defining "property" as "land, or any interest in land" and including, among other items, structures, fixtures and other improvements to the property); R. 4:73-2(a) (designating parties to a condemnation proceeding as "[t]he record owner, the occupant, if any, such other persons appearing of record to have any interest in the property and such persons claiming an interest therein as are known to the plaintiff..."); City of Atlantic City v. Cynwyd Invs., 148 N.J. 55, 689 A.2d 712 (1997) (recognizing interest of a ninety-nine-year tenant and its subtenant, whose rental and financial obligations under the lease were affected by the acquisition price, to participate in a condemnation trial); State, by Comm'r of Transp. v. Jan-Mar, Inc., 210 N.J.Super. 236, 509 A.2d 310 (Law Div. 1985) (conferring standing as a defendant on a tenant, who held an option to purchase and had a claim to a portion of the condemnation proceeds, to present evidence of value in a commissioners' hearing); New Jersey Sports & Exposition Auth. v. Borough of E. Rutherford, 137 N.J.Super. 271, 348 A.2d 825 (Law Div. 1975) (same with regard to tenant).
Accordingly, the City, as the statutorily-entrusted entity, will continue to prosecute the condemnation action and, pursuant to the Redeveloper Agreement, Asbury Partners will assist and participate in a coordinated effort to successfully complete the acquisition of the subject parcel. We expect there will be a mutual exchange of information and an ongoing dialogue between Asbury Partners and the City during the condemnation proceeding and that the redeveloper's representatives will be available to testify, if necessary.
Affirmed.
NOTES
[1] Appellant initially filed a protective interlocutory appeal from this order (A-1520-05T1) and thereafter filed a Notice of Appeal (A-1167-05T1). We granted leave to appeal and consolidated these appeals.
[2] The record does not reflect the value of the land Asbury Partners has acquired.
[3] The moving papers are not in the appellate record; however, Asbury Partners' proposed order, which was denied, requests intervention as a party and provides, in pertinent part: "Asbury Partners, LLC is hereby authorized to fully participate in this case with respect to discovery, motion practice, case management and all other matters and proceedings."
[4] Rule 4:33-1 establishes the four criteria for determining intervention as of right: The applicant must (1) make a timely application; (2) claim an interest relating to the property or transaction which is the subject of the action; (3) show it is so situated that disposition of the action may as a practical matter impair or impede the ability to protect that interest; and (4) demonstrate its interest is not adequately represented by existing parties.
[5] In Mt. Laurel Twp. v. Stanley, 185 N.J. 320, 323 n. 2, 885 A.2d 440 (2005) intervenor status was granted to several individuals and public advocacy organizations that sought to "vindicate the purposes of Mount Laurel I [Southern Burlington County N.A.A.C.P. v. Mount Laurel Tp., 67 N.J. 151, 336 A.2d 713 (1975)] and Mount Laurel II [Southern Burlington County N.A.A.C.P. v. Tp. of Mount Laurel, 92 N.J. 158, 456 A.2d 390 (1983)]". In Casino Reinvestment Dev. Auth. v. Hauck, 162 N.J. 576, 578, 745 A.2d 1163 (2000) the Court permitted the intervention in a case then pending on remand pursuant to Township of West Windsor v. Nierenberg, 150 N.J. 111, 695 A.2d 1344 (1997), of a property owner and the State of New Jersey, on the issue of monetary interest on condemnation awards arising in both actions.